IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENT FORTILLO,<br>INDIVIDUALLY AND ON BEHALF OF<br>ALL OTHERS SIMILARLY SITUATED,<br><br>*Plaintiff*,<br><br>v.<br><br>ODYSSEY FUN WORLD, LLC,<br><br>*Defendant*. | Case No.: 1:20-cv-6850<br><br>Judge:<br><br><u>JURY DEMANDED</u> |

**CLASS ACTION COMPLAINT**

Plaintiff Vincent Fortillo (hereinafter "Plaintiff" or "Fortillo"), brings this Class Action Complaint individually and on behalf of all others similarly situated against Defendant Odyssey Fun World, LLC (hereinafter "OFW" or "Defendant") to stop Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's and the proposed Class's sensitive, private, and personal biometric data. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys. Further, Plaintiff alleges as follows:

**PARTIS, JURISDICTION, AND VENUE**

1. Plaintiff is a natural person and resident in this District.

2. Plaintiff worked for OFW as an arcade repair technician at a location at 19111 Oak Park Ave, Tinley Park, IL 60477 that Defendant owned, operated, maintained, and/or controlled located in Illinois. While doing so, Plaintiff was also a citizen of Illinois.

3. Defendant OFW is an Illinois limited liability company with places of business in Illinois.

4. Defendant OFW may be served through its registered agent, Robert Charal and Inter Continental Real Estate & Development Corporation at 2221 Camden Court, Suite 200, Oak Brook, IL 60523.

5. Plaintiff is aware of at least one other member of the class that does not reside in Illinois.

6. This Court has jurisdiction under 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA") because there are 100 or more members of the class, the parties and putative class members are minimally diverse and the aggregate amount in controversy is greater than $5,000,000.

7. This Court has personal jurisdiction over OFW because they conduct a substantial amount of business here, which forms the basis of Plaintiff's claims. OFW operates an indoor theme park in Illinois and is registered to do business in this state.

8. Venue is proper here under 28 U.S.C. § 1391(b)(2) because a substantial amount of the acts and omissions giving rise to the claims occurred in Illinois.

## INTRODUCTION

9. While most establishments and employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Defendant, upon information and belief, mandated and required that employees, and others who worked at its location,

have their biometrics collected, captured, stored, and used by a biometric timekeeping device.

10. Unlike ID badges or time-cards – which can be charged or replaced if stolen or compromised – biometrics are unique, permanent biometric identifiers associated with each person.

11. This exposes Defendant's employees/workers, including Plaintiff and those similarly situated to him, to serious and irreversible privacy risks.

12. For example, if biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax, Uber, Facebook/Cambridge Analytica, and Marriott data breaches or misuses – employees have **no** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this highly personal and private information.

13. In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. *U.S. Off. Of Peronnel Mgmt., Cybersecurity Incidents (2018)* available at http://www.opm.gov/cybersecurity/cybersecurity-incidents.

14. An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft,* The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/

15. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), available at:

    https://www.tribuneindia.com/news/archive/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details-523361.

16. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that store Illinois citizens' biometrics.

17. Plaintiff began working at OFW as an arcade repair technician in or around September 2019.

18. Plaintiff stopped working at OFW in or around March 2020.

19. As an employee/worker of Defendant, Plaintiff was required to "clock in" and "clock out" of work shifts by having his fingerprint scanned by a biometric timeclock, which identified each employee, including Plaintiff.

20. Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards employees'/workers' statutorily protected privacy rights and unlawfully collects, stores, and uses employees'/workers' biometric data in violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it did not and, upon information and belief, continues not to:

    a. Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprint(s) were being collected, stored, disseminated and used, as required by BIPA;

    b. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprint(s), as required by BIPA;

    c. Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their fingerprint(s), as required by BIPA; and

21. The State of Illinois takes the privacy of biometric data seriously.

22. There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new hand, which makes the protection of, and control over, biometric identifiers and biometric information particularly important.

23. Plaintiff and the putative Class are aggrieved by Defendant's failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of employees' last interactions with the company.

### ILLINOIS' STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION

24. BIPA provides valuable privacy rights, protections, and benefits to employees in Illinois.

25. Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then growing, yet unregulated technology. *See* 740 ILCS 14/5.

26. In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial

and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

27. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008, See Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

28. Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000 or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

29. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a. Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c. Receives a written release executed by the subject of the biometric identifier or biometric information."

See 740 ILCS 14/15(b).

30. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

31. Biometric identifiers include fingerprints, retina and iris scans, voiceprints, and scans of hand and face geometry. See 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

32. BIPA also prohibit selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply within a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

33. The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identify theft and left without any recourse.

34. BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach,

BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

35. Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## PLAINTIFF SPECIFIC ALLEGATIONS

36. Plaintiff was required to "clock-in" and "clock-out" using a timeclock that operated, at least in part, by scanning Plaintiff's fingerprint.

37. As an employee/worker, Plaintiff was required to scan at least one finger, multiple times, so Defendant could create, collect, capture, construct, store, use, and/or obtain a biometric template for Plaintiff.

38. Defendant then used Plaintiffs biometrics as an identification and authentication method to track his time, potentially with the help of a third-party vendor.

39. Defendant subsequently stored Plaintiffs biometric data in its database(s).

40. Each time Plaintiff began and ended his workday, in addition to clocking in and out for lunches, he was required to scan his fingerprint using the biometric timeclock device.

41. Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, or used his biometrics.

42. Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has he ever been informed of whether Defendant will ever permanently delete his biometrics.

43. Plaintiff has never been provided with nor ever signed a written release allowing Defendant to collect, capture, store, or otherwise obtain his fingerprint(s), handprint, hand geometry, or other biometrics.

44. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

45. BIPA protects employees like Plaintiff and the putative Class from this precise conduct, and Defendant had no right to secure this data.

46. Through BIPA, the Illinois legislature has created a right - a right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data - and an injury - not receiving this extremely critical information.

47. Pursuant to 740 ILCS 14/15(b), Plaintiff and the putative Class were entitled to receive certain information prior to Defendant securing their biometric data; namely, information advising them of the specific limited purpose(s) and length of time for which it/they collect(s), store(s), and use(s) their fingerprint(s) and any biometrics derived therefrom; information regarding Defendant's biometric retention policy; and, a written release allowing Defendant to collect and store their private biometric data.

48. No amount of time or money can compensate Plaintiff if his biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated Plaintiff's and other similarly-situated individuals' biometrics, and Plaintiff would not have provided his biometric data to any Defendant if he had known that they would retain such information for an indefinite period of time without his consent.

49. A showing of actual damages is not necessary in order to state a claim under BlPA *See Rosenbach v Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not

allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

50. As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

### DEFENDANT'S BIOMETRIC FINGER-SCANNING OF EMPLOYEES

51. By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using employees' biometric data as an authentication method stopped doing so.

52. However, Defendant failed to take note of the shift in Illinois law governing the collection and use of biometric data. As a result, Defendant continues to collect, store, use, and disseminate employees' biometric data in violation of BIPA.

53. At relevant times, Defendant has taken the rather invasive and coercive step of requiring employees to be fingerprint scanned, and then using biometric information captured from those fingerprint scans, and data derived therefrom, to identify the employee and track employee work time.

54. After an employee's finger scans are captured, collected, and/or recorded by Defendant, employees are subsequently required to scan their finger into one of Defendant's biometric time clocks when they clock in or out at work.

55. Defendant captured, collected, stored, and/or otherwise obtained the employee's biometrics in order to identify and verify the authenticity of the employee who is clocking in or out.

56. Moreover, Defendant caused these biometrics to be associated with employees, along with other employee personal and work information.

57. Defendant has a practice of using biometric time clocks to track its employees, albeit without regard to Illinois' requirements under BIPA.

58. As part of the employee time-clocking process, Defendant caused biometrics from employee finger scans to be recorded, collected, captured, and stored at relevant times.

59. Defendant has not, on information and belief, properly informed employees in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored; informed employees in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; obtained employees' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and biometric information derived from it; or obtained employees' executed written release as a condition of employment.

60. When Plaintiff arrived for work, and when Plaintiff left or clocked in or out of work, at relevant times during his employment, Defendant required Plaintiff to submit Plaintiff's finger scan to the biometric timekeeping system.

61. The system captured, collected, stored, and/or otherwise obtained Plaintiff's biometrics.

62. Defendant further required Plaintiff to scan Plaintiff's finger(s) in order to use the biometric system, so that the timekeeping system captured, collected, stored, and/or otherwise obtained Plaintiff's finger scan, matched Plaintiff's finger scan biometrics, and associated Plaintiff's biometrics with Plaintiff's identity.

63. Defendant did not at any time, on information and belief: inform Plaintiff in writing (or otherwise) that a biometric identifier and biometric information was being obtained,

captured, collected, and/ or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain, or attempt to obtain, Plaintiff's executed written release to have Plaintiff's biometrics captured, collected, stored, or recorded as a condition of employment - Plaintiff did not provide consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiff's fingerprint, finger scan, finger geometry, or associated biometrics. Nor did Plaintiff know or fully understand that Defendant was collecting, capturing, and/or storing biometrics when Plaintiff was scanning Plaintiffs finger; nor did Plaintiff know or could Plaintiff know all of the uses or purposes for which Plaintiffs biometrics were taken.

64. The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendant's - where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so - is dangerous.

65. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as a finger scan, and/ or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

66. Thus, BIPA is the Illinois Legislatures expression that Illinois citizens have biometric privacy rights, as created by BIPA.

67. Defendant disregarded these obligations and instead unlawfully collected, stored, and used employees' biometric identifiers and information, without ever receiving the individual's informed written consent as required by BIPA.

68. By and through the actions detailed above, Defendant has not only disregarded the Class' privacy rights, but it has also violated BIPA.

69. Defendant's above-described use of biometrics benefits only Defendant. There is no corresponding benefit to employees: Defendant has required or coerced employees to comply in order to receive a paycheck, after they have been committed to the job.

## CLASS ALLEGATIONS

70. Plaintiff brings this action on behalf of himself and pursuant to 735 ILCS 5/2-801 on behalf of a class (hereinafter the "Class") defined as follows:

    > All persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant in Illinois during the applicable statutory period.

    Excluded from the class are Defendant's officers and directors, Plaintiffs counsel, and any member of the judiciary presiding over this action.

71. **Numerosity:** The exact number of class members is unknown and is not available to Plaintiff at this time, but upon information and belief, there are in excess of forty potential class members, and individual joinder in this case is impracticable. Class members can easily be identified through Defendant's records and allowing this matter to proceed on a class basis will prevent any retaliation by Defendant against current employees who are currently having their BIPA rights violated.

72. **Common Questions:** There are several questions of law and fact common to the claims of Plaintiff and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

    a. whether Defendant has a practice of capturing or collecting employees' biometrics;

    b. whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendant, whichever occurs first;

    c. whether Defendant obtained an executed written release from finger scanned employees before capturing, collecting, or otherwise obtaining employee biometrics;

    d. whether Defendant obtained an executed written release from finger scanned employees, as a condition of employment, before capturing, collecting, converting, sharing, storing or using employee biometrics;

    e. whether Defendant provided a writing disclosing to finger scanned employees the length of time for which the biometrics are being collected, stored, and used;

    f. whether Defendant's conduct violates BIPA;

    g. whether Defendant's conduct was negligent, reckless, or willful;

    h. whether Plaintiff and Class members are entitled to damages, and what is the proper measure of damages;

73. **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interest of the class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the class, and Defendant has no defenses unique to Plaintiff.

74. **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because of the fear and likelihood of retaliation by Defendant against current employees bringing a civil action as an individual. Even if

Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

### COUNT I - FOR DAMAGES AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/15(a) - FAILURE TO INSTITUTE, MAINTAIN, AND ADHERE TO PUBLICLY AVAILABLE RETENTION SCHEDULE

75. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

76. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention - and, importantly, deletion - policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ll) actually adhere to that retention schedule and actually delete the biometric information. See 740 ILCS 14/15(a).

77. Defendant fails to comply with these BIPA mandates.

78. Defendant is an Illinois corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. See 740 ILCS 14/10.

79. Plaintiff is an individual who had his "biometric identifiers" collected by each Defendant, as explained in detail in above. See 740 ILCS 14/10.

80. Plaintiff's biometric identifiers were used to identify Plaintiff and, therefore, constitute "biometric information" as defined by BIPA. See 740 ILCS 14/10.

81. Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. See 740 ILCS 14/15(a).

82. Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

83. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**COUNT II - FOR DAMAGES AGAINST DEFENDANT VIOLATION OF 740 ILCS 14/1S(b) - FAILURE TO OBTAIN INFORMED WRITTEN CONSENT AND RELEASE BEFORE OBTAINING BIOMETRIC IDENTIFIERS OR INFORMATION**

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity

to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject. . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject. . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information ... " 740 ILCS 14/15(b) (emphasis added).

86. Defendant fails to comply with these BIPA mandates.

87. Defendant is an Illinois corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. See 740 ILCS 14/10.

88. Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendants, as explained in detail above. See 740 ILCS 14/10.

89. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

90. Defendant systematically and automatically collected, used, stored, and disseminated Plaintiffs and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

91. Defendant never informed Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/ or biometric

information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

92. By collecting, storing, using and disseminating Plaintiffs and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

93. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

A. Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/ 2-801, *et seq.*, and certifying the Class as defined herein;

B. Designating and appointing Plaintiff as representative of the Class and Plaintiffs undersigned counsel as Class Counsel;

C. Declaring that Defendant's actions, as set forth above, violate BIPA;

D. Awarding Plaintiff and the Class members statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2);

> statutory damages of $1,000 per each negligent violation of BIPA pursuant to 740 ILCS 14/ 20(1);

E. Declaring that Defendant's actions, as set forth above, were intentional or reckless;

F. Declaring that Defendant's actions, as set forth above, were negligent;

G. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

H. Awarding Plaintiff and the Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 740 ILCS 14/20(3);

I. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

J. Granting all such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated November 18, 2020

Respectfully Submitted:

By: */s/Syed Haseeb Hussain*
Syed H. Hussain, Esq. - IL Bar # 6331378
**HASEEB LEGAL LLC**
440 N McClurg Court, Ste 803
Chicago, IL 60611
Ph: 954-225-4934
Email: sh@haseeblegal.com

COUNSEL FOR THE PLAINTIFF AND THE PUTATIVE CLASS